## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MONSANTO COMPANY, a Delaware Corporation, and P4 PRODUCTION, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. CV 01-607-E-LMB |
| v. | ) ) | **MEMORANDUM DECISION AND ORDER** |
| PACIFICORP, an Oregon Corporation, | ) ) | |
| Defendant. | ) ) | |

Currently pending before the Court are Plaintiff Monsanto Corporation's Renewed Petition for Attorney Fees (Docket No. 108), Application for Fees on Appeal (Docket No. 120), and Motion to Transfer its appellate attorney fees application to this Court for consideration (Docket No. 119). In the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral arguments, the Court will address and resolve these pending motions without a hearing. Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Order.

## I.

## BACKGROUND

In 1995, Plaintiff Monsanto Corporation ("Monsanto") and Defendant PacifiCorp entered into a Power Supply Agreement ("the Agreement"). *Complaint*, Ex. A, pp. 11–15

(Docket No. 1).  The clause governing the term of the Agreement provided as follows:

> Subject to the approval of the Idaho Public Utilities Commission, this Agreement shall become effective on November 1, 1995, shall continue in full force in effect through December 31, 2001 and thereafter shall be renewed annually until either party gives at least one year's written notice of termination.

*Complaint*, Ex. A, p. 15 (Docket No. 1).  The parties disagreed about how this section should be interpreted.  *Compare Notice of Removal*, Ex. A (Docket No. 1), *with Answer* (Docket No. 4).

Each proposed a different date on which a party could first give the one-year notice terminating the Agreement and, thus, a different date for the earliest time that termination of the Agreement could occur.  PacifiCorp, the drafter of the Agreement, claimed the Agreement could be terminated at the end of 2001, *Answer*, p. 4 (Docket No. 4) (seeking the Court's declaration that "the Agreement terminates as of December 31, 2001")*,* while Monsanto claimed that termination could occur, at the earliest, one year later, *Notice of Removal*, Ex. A, p. 4 (Docket No. 1) (seeking the Court's declaration that "the parties can only exercise the option to terminate by giving one year's written notice of termination <u>after</u> December 31, 2001").

The parties had entered into a series of continuous power supply agreements dating back to the 1950s.  *PacifiCorp's Trial Memorandum*, p. 1 (Docket No. 54).  New agreements were typically renegotiated prior to the expiration of the prior agreement, and such was the case with the 1995 Agreement.  *Id.* at p. 2.  The 1995 Agreement replaced one entered into by the parties in July of 1991, covering the period of time from July 1992 through June 1997.  *Id.*

In 1999, PacifiCorp merged with ScottishPower.  *See id.*  After the merger, the parties' prior practice of negotiating a new agreement before the prior agreement expired had failed.  When PacifiCorp submitted a request for approval of its merger with ScottishPower to the Idaho Public Utilities Commission (IPUC), attorneys for Monsanto intervened in the proceedings and

**MEMORANDUM DECISION AND ORDER - 2**

filed objections to the merger.  *Id.*  Monsanto argued that an approval of the merger would negatively affect its electric rates.  The IPUC approved the merger.

After the merger was approved, the parties tried again to negotiate a new agreement, but negotiations were unsuccessful.  Ultimately, the parties submitted the issue to the IPUC at a rate hearing, and the commission set the new prospective rate in March of 2003.  The parties entered into a new agreement utilizing this rate.  The IPUC ruled that the new rate would be retroactive to either January 1, 2002 or January 1, 2003, depending on what this Court determined was the termination date of the Agreement.

In November 2001, Monsanto filed a Complaint for Declaratory Judgment in state court, seeking a declaratory determination of the termination date for the parties' 1995 Agreement.  *Notice of Removal*, Ex. A, pp. 9–10 (Docket No. 1).  PacifiCorp removed this action to federal court.  *Notice of Removal* (Docket No. 1).

In February 2002, PacifiCorp filed a Motion for Summary Judgment (Docket No. 12).  The district court denied PacifiCorp's motion, finding the term provision in the 1995 Agreement ambiguous and holding that "[w]here the contract is ambiguous and 'the parties' mutual intent cannot be understood from the language used, intent becomes a question for the trier of fact, to be ascertained in light of the extrinsic evidence'" presented at trial.  *Memorandum Decision and Order*, p. 4 (Docket No. 32) (quoting *First Sec. Bank of Idaho, N.A. v. Murphy*, 131 Idaho 787, 791, 964 P.2d 654, 658 (1998)).

The parties proceeded to a court trial, which commenced on September 22, 2003.  *See Minutes of Court Trial* (Docket Nos. 80–82).  After examining the language of the 1995 Agreement, the context in which the Agreement was negotiated, the conduct of the parties at the time of entering into the Agreement, the testimony of the witnesses, and all other extrinsic

**MEMORANDUM DECISION AND ORDER - 3**

evidence admitted at the trial, the Court concluded that the parties' 1995 Agreement contained an automatic renewal provision of one year after the initial six-year base period. *Findings of Fact, Conclusions of Law, Memorandum Decision and Order*, pp. 31–32 (Docket No. 87). As a result, the earliest that notice of termination could have been given was January 1, 2002. Thus, the Court found, and thus concluded, the parties' Agreement terminated on January 2, 2003. *Id.*

On February 13, 2004, Monsanto, as the prevailing party, filed a Petition for Attorney Fees pursuant to Idaho Code § 12-120(3). (Docket No. 89). On February 27, 2004, PacifiCorp appealed the Judgment entered in Monsanto's favor. *PacifiCorp's Notice of Appeal* (Docket No. 94). In light of the pending appeal, the Court temporarily denied Monsanto's Petition for Attorney Fees (Docket No. 89), concluding that "the most reasonable and efficient manner to ensure a consistent and appropriate resolution is to wait until the appeal process has been completed before attempting to determine the motion for attorneys fees." *Order*, p. 1 (Docket No. 97).

On August 24, 2005, the Ninth Circuit Court of Appeals affirmed the Order and Judgment of this Court and the District Court's denial of summary judgment. *Ninth Circuit Court of Appeals' Memorandum* (Docket No. 105); *Ninth Circuit Court of Appeals' Judgment* (Docket No. 106). Thereafter, on September 21, 2005, Monsanto filed a Renewed Petition for Attorney Fees, seeking $503,214.15 in total fees for counsel's trial and appellate work. (Docket No. 108).

On September 22, 2005, Monsanto filed its Motion to Transfer (Docket No. 119) with the Ninth Circuit Court of Appeals, which granted the motion, thereby transferring Monsanto's appellate fee application to the district court. *Ninth Circuit Court of Appeals Order* (Docket No. 118).

**MEMORANDUM DECISION AND ORDER - 4**

## II.

## RENEWED PETITION FOR ATTORNEY FEES

As determined at the trial of this action, the parties' dispute is governed by Idaho substantive law.  *Findings of Fact, Conclusions of Law, Memorandum Decision and Order*, p. 4 (Docket No. 87) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (noting federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law)).  The parties agree that disposition of Monsanto's petitions for attorney fees is likewise governed by Idaho law.  *See Monsanto's Renewed Petition for Attorney Fees*, p. 2 (Docket No. 108); *Memorandum in Support of Objection to Monsanto's Renewed Petition for Attorney Fees*, p. 2 (Docket No. 123); *see also Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003) ("An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law.").

Awards of attorney fees in civil actions in Idaho are governed by Idaho Code Section 12-120, which provides as follows:

> In any civil action to recover on . . . [a] contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

Idaho Code § 12-120(3) (2001).  The pending petition is a request for an award of attorney fees in a dispute arising out of a commercial transaction as contemplated by section 12-120(3), therefore, this section applies.

Idaho law determines both the right to attorney fees in this action and "the method of calculating the fees."  *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  In Idaho, the method of calculating reasonable attorney fees is set forth in Idaho Rule of Civil

Procedure 54(e)(3). *See Johnson v. Incline Village Gen. Imp. Dist.*, 5 F. Supp. 2d 1113, 1116–17 (D.Nev. 1998) (recognizing that a state court rule setting forth factors to consider in awarding attorney fees must be applied to determine the reasonableness of a fee award made pursuant to state law).

Rule 54(e)(3) requires the Court to consider the following factors in determining the amount of reasonable attorney fees:

    (A)    The time and labor required.

    (B)    The novelty and difficulty of the questions.

    (C)    The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.

    (D)    The prevailing charges for like work.

    (E)    Whether the fee is fixed or contingent.

    (F)    The time limitations imposed by the client or the circumstances of the case.

    (G)    The amount involved and results obtained.

    (H)    The undesirability of the case.

    (I)    The nature and length of the professional relationship with the client.

    (J)    Awards in similar cases.

    (K)    The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case.

    (L)    Any other factor which the court deems appropriate in the particular case.

Idaho R. Civ. P. 54(e)(3); *see also Pinnacle Eng'rs, Inc. v. Heron Brook, LLC*, 139 Idaho 756, 760, 86 P.3d 470, 474 (2004) (requiring consideration of these factors when awarding fees pursuant to Idaho Code §12-120(3)).  Although these factors must be considered, the Court is not required to make specific findings in the record with regard to how it employed or applied any of the factors.  *Smith v. Mitton*, 140 Idaho 893, 902, 104 P.3d 367, 376 (2004); *Irwin Rogers Ins.*

**MEMORANDUM DECISION AND ORDER - 6**

*Agency, Inc. v. Murphy*, 122 Idaho 270, 277, 833 P.2d 128, 135 (Ct. App. 1992).  Importantly, the Court possesses considerable discretion in determining the reasonableness of an attorney fees request.  *See Webb v. Ada County*, 195 F.3d 524, 526 (9th Cir. 1999).

Notably, the above-listed factors are to be considered in setting a *reasonable* attorney's fee.  *See* Idaho Code § 12-120(3).  Accordingly, the amount of fees billed to a prevailing party by its counsel does not dictate the amount of attorney fees the Court ultimately awards to a party. *See Daisy Mfg. Co. v. Paintball Sports, Inc.*, 134 Idaho 259, 263, 999 P.2d 914, 918 (Ct. App. 2000) (noting the reasonable attorney fee set by a court pursuant to Idaho Code § 12-120(3) "may be more or less than the sum which the prevailing party is obligated to pay its attorney under their agreement").  Thus, for example, when the Court considers the first factor, "time and labor required," the Court is to consider the reasonableness of the time and labor expended by the attorney and "need not blindly accept the figures advanced by the attorney."  *Daisy Mfg. Co.*, 134 Idaho at 263, 999 P.2d at 918 ("An attorney cannot 'spend' his time extravagantly and expect to be compensated by the party who loses at trial.") (quoting *Craft Wall of Idaho, Inc. v. Stonebraker*, 108 Idaho 704, 706, 701 P.2d 324, 326 (Ct. App. 1985)).[1]

---

[1]  Monsanto asserts that some of the cases cited by PacifiCorp are inapplicable to the determination of attorney fees in this case because the cases construe attorney fees awards under 42 U.S.C. § 1988.  *Monsanto's Reply in Support of Renewed Petition for Attorney Fees*, p. 2 (Docket No. 128).  To set an attorney fees award pursuant to 42 U.S.C. § 1988, the Court first calculates a "lodestar" by multiplying the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  *McGrath v. County of Nev.*, 67 F.3d 248, 252 (9th Cir. 1995).  The lodestar calculation method takes into consideration most of the same factors enumerated in Idaho Rule of Civil Procedure 54(e)(3).  *See, e.g.*, *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (setting forth the factors to be considered in determining the reasonableness of an attorney fees request), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).  Therefore, PacifiCorp's citation to cases involving attorney fees awards under § 1988 is appropriate, and the Court has considered the holdings and reasoning in those cases.

**MEMORANDUM DECISION AND ORDER - 7**

A.    **Monsanto's Requested Fees**

Monsanto requests an award of attorney fees for its attorneys' trial and appellate work in the following amounts:

> Fees Sought for Trial Work:
>> Husch & Eppenberger, LLC
>>> Fees in original application                              $ 369,721.05
>>> Additional fees in renewed application           <u>26,295.85</u>
>>>                                                                          $ 396,016.90
>> Racine, Olsen, Nye, Budge & Bailey, Chtd.
>>> Fees in original application                              <u>73,213.50</u>
>>
>> Total district court fees:                                     $ 469,230.40
>
> Fees Sought for Appellate Work:
>
>> Husch & Eppenberger, LLC                             $ 32,321.25
>> Racine, Olsen, Nye, Budge & Bailey, Chtd.      <u>1,662.50</u>
>>
>> Total appellate court fees:                               $ 33,983.75
>
> <u>Total Fees Sought:</u>                                                    <u>$ 503,214.15</u>

*Monsanto's Renewed Petition for Attorney Fees*, ¶ 11 (Docket No. 108).  Affidavits filed in support of Monsanto's petition state that the fees requested represent work "actually and necessarily performed in connection with this action."  *Wilson Affidavit*, ¶ 8 (Docket No. 110); *see also Budge Affidavit*, ¶ 6 (Docket No. 113).

The majority of attorney fees sought in the instant action were billed by Harry Wilson and Julia Farrell of the St. Louis, Missouri, law firm of Husch & Eppenberger.  *Wilson Affidavit*, Ex. 1, p. 1 (Docket No. 111) (apportioning $167,808.60 for Mr. Wilson's trial and appellate

work and $131,709.30 for Ms. Farrell's work).  Mr. Wilson, who was admitted *pro hac vice*,

served as lead counsel for Monsanto beginning in February of 2003.  *Wilson Affidavit*, ¶ 8

(Docket No. 110).  He has thirty-one years of experience in litigation and has tried over 200

cases.  *Id.* at ¶ 2.  He billed Monsanto at $261.00 an hour at the time of trial and then $270.00 an

hour thereafter.  *Wilson Affidavit*, Ex. 1 (Docket No. 111).  Ms. Farrell, who also was admitted

*pro hac vice*, has eight years of litigation experience, *Farrell Affidavit*, ¶ 2 (Docket No. 116), and

billed Monsanto at a rate of $154.22 per hour up to and through the trial, and at $171.00 per hour

thereafter. *Wilson Affidavit*, Ex. 1 (Docket No. 111).

   Monsanto also was represented by the Pocatello, Idaho, law firm of Racine, Olson, Nye,

Budge & Bailey.  *See Monsanto's Renewed Petition for Attorney Fees*, ¶ 12 (Docket No. 108).

Randy Budge, who is a partner in the Pocatello firm, served as lead local counsel for Monsanto

and commenced his representation in early 2001.  *See Budge Affidavit*, ¶¶ 3–4 (Docket No. 113).

He has twenty-eight years experience in litigation and has "handled regulatory matters for

Monsanto for a number of years in Idaho, including matters before the IPUC." *Id.* at ¶ 3.  He

billed Monsanto at a rate of $150.00 per hour from April 11, 2001, through February 28, 2003,

and $175.00 per hour thereafter, *id.* at ¶ 4, for a total of $67,552.50.  *Budge Affidavit*, Ex. 1

(Docket No. 114).  Notably, the highest billable hour rate charged by the Pocatello law firm was

$175.00, compared to the high of $351.00 per hour billed by the St. Louis firm for the appeal

taken to the Ninth Circuit Court of Appeals.  *See Budge Affidavit*, Ex. 1 (Docket No. 114);

*Wilson Affidavit*, Ex. 1 (Docket No. 111).

**MEMORANDUM DECISION AND ORDER - 9**

**B.**   **Method of Monsanto's Billing**

PacifiCorp objects to the block billing method employed by both the Husch and Racine law firms. *Memorandum in Support of Objection to Monsanto's Renewed Petition for Attorney Fees*, pp. 12–14 (Docket No. 123). Counsel for PacifiCorp argues that it cannot effectively analyze the number of hours spent on a given task when the time is not recorded in a segregated manner.

The Court has carefully and thoroughly reviewed the billing entries submitted by both the Husch and Racine law firms, and concludes that the entries do not reflect excessive amounts of time spent on particular tasks. The activities described within each block of time appear proportionate to the total amount of time billed. *See* Idaho R. Civ. P. 54(e)(3)(A) (providing that the court must consider the reasonableness of the time and labor involved). The time and labor involved are reasonable as will be discussed in considerable detail below. Therefore, the Court will not disallow an award of attorney fees based on the method of billing.

**C.**   **Objections to Specific Time Entries and Hourly Rates**

PacifiCorp also argues that the fees sought for the trial work in this case are unreasonable and excessive. *Memorandum in Support of Objection to Monsanto's Renewed Petition for Attorney Fees*, pp. 7–12 (Docket No. 123). PacifiCorp specifically challenges the fees related to (1) drafting Monsanto's Complaint for Declaratory Relief; (2) drafting motions that were not filed; (3) billing for unrelated matters; (4) searching for an expert witness after the deadline for expert witness designation had passed; (5) performing work after the trial; and (6) charging rates for legal services by the Husch law firm that are higher than the rates charged for similar services in Idaho. Of these specific challenges, the Court considers the latter to have the most

significant bearing on the overall amount of attorney fees to award to Monsanto; therefore, it will consider this issue first.

### 1. Rates Charged for Legal Services

Rule 54(e)(3) requires the Court to consider both the "skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law" and the "prevailing charges for like work" in determining the reasonableness of the fee award. Idaho R. Civ. P. 54(e)(3)(C),(D). The fee applicant bears the burden of proving that the billing rates fall within the prevailing market rate in the community in which the case was tried. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1993); *see also Lettunich v. Lettunich*, 141 Idaho 425, 435, 111 P.3d 110, 120 (2005) (explaining that "the court should consider the fee rates generally prevailing in the pertinent geographic area, rather than what any particular segment of the legal community may be charging"). In the Ninth Circuit, rates from outside the forum may be used "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates*, 987 F.2d at 1405.

Idaho counsel for Monsanto have satisfied the requirement that the rates charged by the Racine law firm were similar to the prevailing rates charged by Idaho attorneys for this type of legal work. *Budge Affidavit*, ¶ 2 (Docket No. 113). However, Mr. Wilson with the Husch law firm stated that he was familiar with the billing rates for attorneys in *St. Louis, Missouri*, and other areas of the country and described the rates his law firm charged to Monsanto as "fair and reasonable hourly amounts as compared with rates charged by comparable attorneys in this area." *Wilson Affidavit*, ¶¶ 2, 9 (Docket No. 110). Nonetheless, the difference between the

hourly billing rates for the Racine firm and those submitted by the Husch firm generated a substantially higher amount of attorney fees requested by Monsanto.

Although Monsanto is free to select the attorneys who will provide its legal representation, there is nothing in the record before the Court to indicate that local counsel was unavailable due to a lack of experience and expertise in the matters at issue in this declaratory relief action.  In fact, Monsanto initially employed the Racine law firm in early 2001 to provide legal representation for the present action and subsequently hired the Husch firm as co-counsel. *First Budge Affidavit*,[2] ¶ 3 (Docket No. 92); *Budge Affidavit*, ¶ 4 (Docket No. 113).  Therefore, it appears that Monsanto elected to pay the higher billing rates of the St. Louis law firm.

The nature and length of the relationship between the attorney and client is one of the factors the Court must consider in awarding attorney fees under Rule 54(e)(3)(I).  However, this factor does not appear to weigh in favor of Monsanto on the attorney fees issue because it also has a "long professional relationship" with the Racine firm, *Budge Affidavit*, ¶ 3 (Docket No. 113), which has also developed expertise in the areas relevant to this action.  For example, Mr. Budge stated that he has handled regulatory matters for Monsanto for a number of years.  *Id*. Accordingly, the Court determines that the rates charged by Mr. Budge and the other attorneys at his law firm are the appropriate prevailing rates with which to calculate the reasonable attorney fees incurred in this action.

For these reasons, the Court will set the prevailing rate for attorneys with skill and experience similar to that of Mr. Budge at $150.00 per hour for work up to and including

---

[2]  Mr. Budge filed two affidavits.  Docket No. 92, filed in support of Monsanto's original petition for attorney fees is referred to in this Order as the "First Budge Affidavit."  The Affidavit filed at Docket No. 113 is referenced more often in this Order and is simply referred to as the "Budge Affidavit."

**MEMORANDUM DECISION AND ORDER - 12**

February 28, 2003, and at $175.00 per hour thereafter.[3]  *See Budge Affidavit*, ¶ 4 (Docket No.

113).  The billing rate for work performed by Husch attorneys with twenty years or more of

experience, i.e., Wilson, Conran, Arnold, and DeGroot, will be set at the same hourly rate

charged by Mr. Budge, a partner in the Racine law firm with twenty-eight years of experience.

*See Budge Affidavit*, ¶ 3 (Docket No. 113); *Wilson Affidavit*, ¶ 14 (Docket No. 14) (reporting that

Mr. Conran has been a member of the Missouri Bar since 1970, Mr. Arnold since 1977, and Mr.

DeGroot since 1982).

      The billing rate for Ms. Farrell, an attorney at Husch with fewer years of experience, and

those attorneys for whom the Husch firm has provided no information on their qualifications or

terms of service (i.e., Bermel, Kilpatrick, and McCarthy) will be based on the rates billed by

associates at the Racine law firm.[4]  *See Wilson Affidavit*, ¶ 14 (Docket No. 110) (stating that Ms.

---

[3]  Mr. Budge's rate increased during this litigation from $150.00 for his work through February 28, 2003, to $175.00 for all work performed thereafter, *id.* at ¶ 4.  Though other partners at the Racine law firm charged the rate of $175.00, the Court also finds Mr. Budge's rates to be a reasonable prevailing rate for the work performed by the Husch firm.  Accordingly, the Court will apply the $150.00 hourly rate to all work performed by Husch attorneys Wilson, Conran, Arnold, and DeGroot before or on February 28, 2003, and will apply the $175.00 hourly rate for all work performed thereafter.  The Court finds Mr. Budge's rates reasonable as charged and will still calculate his fees based on the two different hourly rates.

[4]  The Court may take judicial notice of any fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Additionally, at least one district court has determined that "a court may take judicial notice of information publicly announced on a party's website" as long as it complies with Rule 201(b)'s requirements.  *Doron Precision Sys., Inc. v. FAAC, Inc.*, No. 05 Civ. 7663(PAC), 2006 WL 760280, at *14 n.8 (S.D.N.Y. Mar. 23, 2006).

   In the present action, Monsanto has not provided any information on the years of experience of attorneys Kilpatrick, Bermel, and McCarthy.  Accordingly, the Court will take judicial notice of the following items to determine the years of experience of each attorney and provide a method to set the reasonable billing rate for these attorneys.  By accessing the Husch & Eppenberger, LLC website, the Court has learned that Ms. Bermel is a member of the Husch firm and has been a member of the Missouri Bar since 1990 and that Mr. Kilpatrick is an associate at the Husch firm and has been a member of the Missouri Bar since 2003.  Joseph Kilpatrick - Biography & Jeanine Bermel - Biography, http://www.husch.com (site visited on April 20, 2006).  There is no information available on the website about "M. McCarthy."  *See Wilson Affidavit*, Ex. 1 (Docket No. 111).

   The website for the Idaho State Bar & Law Foundation, Inc. contains an attorney directory that lists Mr. Smith's Idaho Bar admission date as September 30, 1999, and Ms. Wood's Idaho bar admission date as April 26, 2001.  Attorney Directory, http://www2.state.id.us/isb (site visited on April 20, 2006).

**MEMORANDUM DECISION AND ORDER - 13**

Farrell has been a member of the Missouri Bar since 1995).  Associates at the Racine firm billed

between $110.00 and $135.33 per hour.[5]  *See Budge Affidavit*, Ex. 1 (Docket No. 114).  Mr.

Smith is the most experienced associate from the Racine firm who worked on this case.  He was

admitted to practice in Idaho in 1999, and he billed Monsanto at an hourly rate of $135.33.[6]  *See*

*infra* p. 12 at note 3; *Budge Affidavit*, Ex. 1 (Docket No. 114).  Accordingly, the Court will use

this rate as the prevailing rate for Ms. Farrell and Ms. Bermel, the attorneys at Husch who have

less than twenty years of experience but are beyond being new admittees to the legal practice.

*See infra* p. 12 at note 3; *Wilson Affidavit*, ¶ 14 (Docket No. 110).  Ms. Wood at the Racine law

firm was admitted to the Idaho Bar in 2001, and she billed at a rate of $110.00 per hour for her

work on this case.  *See infra* p. 12 at note 3; *Budge Affidavit*, Ex. 1 (Docket No. 114).  The Court

determines that Ms. Wood's experience is comparable to that of Mr. Kilpatrick at the Husch firm

who has been a member of the Missouri Bar since 2003.  Accordingly, the Court will set the

reasonable prevailing rate for Mr. Kilpatrick's work at $110.00 per hour.  Additionally, because

Monsanto provided no information about the experience of "M. McCarthy" who performed work

on this case at the rate of $148.50 per hour, the Court will reduce the attorney fees for her work

to the rate of $110.00 per hour.

---

[5]  Mr. Budge stated his opinion that the rates charged in this case by all the attorneys in his law firm are "reasonable, usual, and customary" for legal services of the kind provided in this case.  *First Budge Affidavit*, ¶ 2 (Docket No. 92).

[6]  The $135.33 rate billed by Mr. Smith appears to be an average of his billing rates charged throughout the litigation.  Although nothing in the record states his billing rates at any particular time, the Exhibit that lists Mr. Smith's rate, *Budge Affidavit*, Ex. 1 (Docket No. 114), includes the average rate for Mr. Budge of $165.65, although the actual hourly rates charged by Mr. Budge were $150.00 and then $175.00 per hour.  That is, Mr. Budge states in his Affidavit that he billed at $150 an hour between April 11, 2001, and February 28, 2003, and $175 an hour thereafter, *Budge Affidavit*, ¶ 4 (Docket No. 113), yet lists $165.65, an approximate average, on his firm's fee summary chart, *Budge Affidavit*, Ex. 1 (Docket No. 114).  The same fee summary chart lists Mr. Smith's rate as $135.33.  *Id.*  Even if this listed fee is an average, the Court finds it to be a reasonable rate for the services of an attorney with Mr. Smith's years of experience.

**MEMORANDUM DECISION AND ORDER - 14**

Finally, the Court will limit the prevailing rate for the work of Rita Marsh, a legal assistant at Husch, to $50.00 per hour—the median rate charged by the paralegals at the Racine law firm. *See Wilson Affidavit*, ¶ 14 (Docket No. 110); *Budge Affidavit*, ¶ 14 (Docket No. 113); *Budge Affidavit*, Ex. 1 (Docket No. 114) (listing the three paralegal's hourly rates at $45, $50, and $55 per hour).  The Husch firm has provided no information about Ms. Marsh's qualifications or years of experience, and there is no information in the record that would support using a prevailing rate for her services that is higher than that charged by the paralegals at the Racine law firm (and higher than at least one associate at the Racine law firm).

Additionally, the Court notes that it is in its discretion to include paralegal fees in the reasonable amount of attorney fees awarded.  *See* Idaho R. Civ. P. 54(e)(1) (providing that, in any civil action "the court may award reasonable attorney fees, *which at the discretion of the court may include paralegal fees*, to the prevailing party.").  As a policy matter, the Court finds it beneficial to allow recovery of reasonable paralegal fees as part of an attorney fee award because it encourages law firms to use paralegals for appropriate tasks, thereby potentially reducing the amount of fees owed by a client.  In the usual case, the use of paralegals would result in such a reduction in fees because paralegals are typically billed out at a rate lower than that charged for attorneys.  However, if the Court were to award the fees requested by the Husch firm for Ms. Marsh's services, it would negate the purpose of conserving resources because her rate of $117.00 per hour is commensurate with that of an associate attorney, and is higher than the rate of at least one associate at the Racine law firm.  For these reasons, the Court will reduce the hourly rate for Ms. Marsh's work to $50.00 per hour as the reasonable prevailing rate.

**MEMORANDUM DECISION AND ORDER - 15**

**2.  Drafting Monsanto's Complaint for Declaratory Relief**

PacifiCorp also challenges specific time entries on Monsanto's billing statements.  For example, PacifiCorp asserts that the fees related to drafting Monsanto's Complaint for Declaratory Relief are excessive.  *Memorandum in Support of Objection to Monsanto's Renewed Petition for Attorney Fees*, pp. 9–10 (Docket No. 123).  In its billing statement, Monsanto's counsel attributed approximately fifty hours to drafting the Complaint, which is five pages in length.  PacifiCorp argues that it is excessive to bill for fifty hours of work to generate a five-page complaint.  If that were all that was undertaken, the Court would agree.  However, Monsanto explains to the Court's satisfaction that it spent considerable time investigating the potential success of filing such a complaint, including interviewing witnesses and reviewing relevant documents.  Monsanto's counsel claims that they conducted these tasks before filing the Complaint in order to satisfy their obligations under Fed. R. Civ. P. 11.

After reviewing the time entries associated with investigating, researching, analyzing the agreement, and drafting the Complaint, it does not appear that the time spent is excessive.  In making this determination, the Court has taken into consideration the additional tasks Monsanto's counsel conducted prior to the drafting of the Complaint, rather than the actual page length of the Complaint.  Therefore, the Court will not reduce the hourly time entries related to drafting the Complaint.

**3.  Drafting Motions That Were Not Filed**

PacifiCorp also claims that Monsanto's attorney fees request should exclude time spent drafting a motion for summary judgment that was not filed.  *Memorandum in Support of Objection to Monsanto's Renewed Petition for Attorney Fees*, p. 10 (Docket No. 123).  The time

**MEMORANDUM DECISION AND ORDER - 16**

entries associated with the summary judgment motion objected to by PacifiCorp are described as fifteen hours by Mr. Budge and forty-nine hours by Mr. Wilson. *Id*. Monsanto's counsel argue that they later used the research from the unfiled summary judgment motion when filing other motions in the case and, therefore, the time should be included in the fee award. *Monsanto's Renewed Petition for Attorney Fees*, ¶ 19 (Docket No. 108); *Farrell Affidavit*, ¶ 3 (Docket No. 116). However, counsel does not specify how much of the time allocated to the summary judgment motion reduced the time spent on later-filed motions. As a result, the Court is unable to determine how much time spent on researching and preparing for the unfiled motion may have been reasonably expended.

Although there may have been strategic reasons for deciding not to file the motion, the fees will not be allowed as they relate to Monsanto's petition for an award of attorney fees. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1263 n.8 (9th Cir. 1987) (noting that a fee claimant must show that counsel made a good faith effort to exclude hours that are excessive, redundant or unnecessary). Accordingly, the work and time spent preparing a motion for summary judgment which was not filed will be excluded from the fee award calculation.

PacifiCorp argues that the legal work related to the unfiled motion for summary judgment was performed by Mr. Wilson of the Husch firm. However, review of the billing statements reveals that Ms. Farrell and Mr. DeGroot worked on the summary judgment motion. *See Wilson Affidavit*, Ex. 2A, pp. 12–13 (Docket No. 112); *see also Farrell Affidavit*, ¶ 3 (Docket No. 116). Additionally, the Court has carefully reviewed the billing records and has concluded that only 45.6 hours should be excluded for time spent by the Husch law firm on the unfiled motion, not the 49 hours requested, because some of the time entries involve other unrelated activities and have been reduced to account for the additional work. Therefore, the Court will deduct 42.6

**MEMORANDUM DECISION AND ORDER - 17**

total hours from Ms. Farrell's hours and 3.0 hours from Mr. DeGroot's total hours. *See Wilson Affidavit*, Ex. 2A, pp. 12–13 (Docket No. 112).

Moreover, because the bill submitted by the Racine law firm does not list who performed each task, *see Budge Affidavit*, Ex. 2A (Docket No. 115), and Monsanto has not disputed PacifiCorp's description of the work on the summary judgment motion as being performed by Mr. Budge, the hours of Mr. Budge will be reduced on the unfiled motion.  In summary, the Court has reviewed the Racine law firm's billing statement and concludes that only 13.4 hours were spent by the Racine firm working on the unfiled motion for summary judgment. *See id.*, at pp. 1–2.

### 4.    Billing for Matters Unrelated to the Present Action

Next, PacifiCorp claims that Monsanto included billing items in the fee request that do not relate to the declaratory relief action. *Memorandum in Support of Objection to Monsanto's Renewed Petition for Attorney Fees*, pp. 10–12 (Docket No. 123).  They assert that six and one-half hours of Mr. Budge's time entries relate to other work he was performing for Monsanto.[7] Mr. Budge responded to the objections to these time entries, explaining that the entries related to global settlement attempts of all disputes between PacifiCorp and Monsanto and that it was necessary for him to inform the Idaho Public Utilities Commission about the outcome of this action; i.e., the work related to phone conversations with PacifiCorp's attorney, John Eriksson,

---

[7]  These entries are (1) the December 30, 2002, entry of 0.30 hours for a telephone conference regarding the new power supply contract, *Budge Affidavit*, Ex. 2A, p. 15 (Docket No. 115); (2) the January 20, 2003, entry of 0.30 hours for a telephone conference regarding settlement of kiln damage claim and contract start date, *id.* at pp. 15–16; (3) the January 22, 2003, entry of 0.60 hours for a telephone conference regarding a settlement conference, *id.* at p. 16; (4) the January 23, 2003, entry of 0.60 hours for a telephone conference regarding a conference with the Court, *id.*; (5) the March 4, 2003, entry of 0.30 hours for a telephone conference regarding kiln damage claim analysis, *id.* at p. 17; (6) the May 3, 2003, entry of 2.00 hours for a telephone conference regarding kiln damages claim, *id.* at p. 19; (7) the February 2, 2004, entry of 1.60 hours for reviewing the judgment and conferencing with IPUC to inform it about the judgment, *id.* at p. 32; and (8) the February 3, 2004, entry of 0.80 hours for a meeting with a representative of the IPUC regarding the court decision and special contract start date issues, *id.*

**MEMORANDUM DECISION AND ORDER - 18**

regarding a new Power Supply Contract, the court action and the IPUC, and settlement of kiln damage claims. *Budge Affidavit*, ¶ 11 (Docket No. 113).

The Court finds, and thus concludes, that the billing entries related to the kiln damage claims (i.e., the January 20, March 4, and May 3, 2003 entries, which total 2.6 hours) are unrelated to the instant litigation and will not be allowed. Again, because the bill submitted by the Racine law firm does not list who performed each task, *see Budge Affidavit*, Ex. 2A (Docket No. 115), and Monsanto has not disputed PacifiCorp's description of the work on the summary judgment motion as being performed by Mr. Budge, the hours of Mr. Budge will be reduced by $447.50 (i.e., 0.3 hours at $150 an hour and 2.3 hours at $175 an hour, *see Budge Affidavit*, ¶ 4 (Docket No. 113) (discussing change in billable rate after February 28, 2003)).

### 5.   <u>Expert Witness</u>

PacifiCorp also requests that the attorney fees award be reduced in the amount of twenty-nine hours for time spent searching for an expert witness. *Memorandum in Support of Objection to Monsanto's Renewed Petition for Attorney Fees*, p. 11 (Docket No. 123). Monsanto attempted to locate a linguistic expert to testify at trial, but that attempt was made after the expert disclosure deadline had passed. *See Motion for Leave to Name Expert Witness Out of Time* (Docket No. 47). The Court denied Monsanto's attempt to designate the expert, and therefore, no testimony from this individual was used at trial. *See Minutes of District Court Hearing on July 1, 2003* (Docket No. 53); *Monsanto's Renewed Petition for Attorney Fees*, ¶ 21 (Docket No. 108). Accordingly, 29.5 hours allocated to this attempted expert designation will be excluded.[8]

---

[8] The Court notes that the detailed billing statement provided by the Racine law firm does not identify which attorney performed each task, but only summarizes the tasks performed on each day. *See Budge Affidavit*, Ex. 2A (Docket No. 115). Accordingly, it is impossible for the Court to know which attorney from the Racine office worked on the expert witness issue. Because Monsanto did not provide information adequate to make this

**MEMORANDUM DECISION AND ORDER - 19**

A careful review of the challenged time entries in the Racine law firm's bill indicates that some of the time objected to by PacifiCorp may have been spent on other tasks, such as mediation issues.  *See, e.g.*, *Budge Affidavit*, Ex. 2A, p. 22 (6/10/03 entry) (Docket No. 115).  However, because of the method used by the Racine firm, the Court is unable to determine how much of the time listed in the block entry should be attributed to locating, working with, and attempting to designate the linguistic expert.  Although the Court has excluded all of the time associated with the expert entries in the Racine law firm's bill, none of the time spent on the expert designation issue that was included in the Husch firm's bill has been challenged by PacifiCorp or excluded by the Court from the fee award calculation.  *See Wilson Affidavit*, Ex. 2A, pp. 41–45 (Docket No. 112) (showing time entries from the Husch law firm related to the expert designation).  Considering these circumstances, and after an extensive review of the billing statements, 29.5 hours is a reasonable overall estimate of the time spent on the expert designation issue and is excluded from the fee award calculation.

### 6.   Fees For Work After Trial

Finally, PacifiCorp challenges the fees Monsanto generated after submitting its original fee petition.  Monsanto has requested an additional $26,295.85 in attorney fees in this category.  *See Wilson Affidavit*, Ex. 1 (Docket No. 111).  These fees are not related to the billable time spent defending against PacifiCorp's appeal of the Court's declaratory relief determination, but represent additional work Monsanto performed after the trial.  Monsanto's counsel claim that these fees were reasonable and necessary.

---

determination, the Court will consider it was Mr. Budge who performed the work and will deduct the 29.5 hours from Mr. Budge's total hours at his hourly rate.

**MEMORANDUM DECISION AND ORDER - 20**

The majority of time spent in this category appears to be in preparing the attorney fees petition.  PacifiCorp objects to the extensive time spent redacting time entries on billing statements, a task that appears to have significantly increased the preparation time for the attorney fees petition.  Monsanto's original fee petition contained approximately three hundred redacted time entries.  The redactions were ostensibly linked to attorney-client communications appearing in the billing statements.  Numerous time entries indicated that Monsanto's counsel were "strategizing" about how to redact billing entries, and a large number of hours were spent actually redacting billing statements.  After PacifiCorp objected to the redactions, Monsanto elected to produce unredacted billing statements under seal.  *See Wilson Affidavit*, Ex. 2B (Docket No. 112).  PacifiCorp argues that this strategy of redacting the billing statements resulted in excessive and unnecessary attorney fees.  The Court agrees.

After reviewing the billing statements for the post-trial time period, the Court concludes that the time spent strategizing about, and then redacting, billing statements is excessive and unnecessary.  Accordingly, PacifiCorp will not be required to pay the fees associated with this work, and these amounts will be excluded from the fee-award calculation.  Again, because of the block billing, some of the excluded time may have been spent on other tasks related to Monsanto's Renewed Petition for Attorney Fees.  *See, e.g.*, *Wilson Affidavit*, Ex. 2B, p. 1 (Docket No. 112) (2/3/2004 time entry for Ms. Farrell describing tasks in a 3.8 hour block of time to include strategizing for preparation of redacting invoices but also analyzing Idaho law on attorney fees).  For this reason, the Court will not exclude from the attorney fee award any time entry in which it appears the time spent on redaction tasks or strategizing was a minor part of a block of time largely dedicated to other tasks.  The Court also will reduce the time to be excluded for redaction tasks to compensate for other tasks included in the same time entries.

**MEMORANDUM DECISION AND ORDER - 21**

Applying these principles, the Court concludes that 12.5 hours should be deducted from Ms.

Farrell's billed hours and 10.2 hours from Ms. Marsh's billed hours.  *See Wilson Affidavit*, Ex.

2B (Docket No. 112) (Ms. Farrell's time entries dated 2/3/2004, for which the Court excluded

half of the time claimed, 2/11/2004, 2/12/204) (Ms. Marsh's time entries dated 2/10/2004 &

2/12/2004, the latter of which the Court deducted by one-third to compensate for other tasks

performed in the same block of time).

**D.      Amount Involved and Results Obtained**

Monsanto requests that the Court, in making its fee-award calculation, consider the result

Monsanto obtained in filing the Complaint for Declaratory Relief.  *See* IDAHO R. CIV. P.

54(e)(3)(G).  Monsanto argues that the amount at issue in this action was over $7,000,000,

thereby justifying approximately a $500,000.00 fee request as representing approximately seven

percent of the amount it obtained as a result of its success in this action.  *Monsanto's Reply in*

*Support of its Renewed Petition for Attorney Fees*, p. 6 (Docket No. 128).

When viewed from this perspective, the results obtained appear to be worth the

expenditure of the time involved in incurring attorney fees in that amount.  Notably, Rule

54(e)(3) does not require the amount of attorney fees awarded to be proportionate to the size or

amount of the damages award.  *Elec. Wholesale Supply Co. v. Nielson*, 136 Idaho 814, 827, 41

P.3d 242, 255 (2001) (citing *Meldco, Inc. v. Hollytex Carpet Mills, Inc.*, 118 Idaho 265, 271, 796

P.2d 142, 148 (Ct. App. 1990)).  Further, the Court is not required to award the amount involved

in the case or dispute more weight or emphasis than should be given to other applicable factors.

*Nielson*, 136 Idaho at 827, 41 P.3d at 255.  Accordingly, the Court does not view the monetary

**MEMORANDUM DECISION AND ORDER - 22**

result obtained in comparison to the amount expended for attorney fees as a factor weighing

heavily in Monsanto's favor. *See* Idaho R. Civ. P. 54(e)(3).

### E.  PacifiCorp's Alleged Recalcitrance

Monsanto also asserts PacifiCorp's recalcitrance in the litigation as a factor in its favor in

determining attorney fees.  Monsanto argues that PacifiCorp aggressively pursued the litigation

and refused to settle.  The Court does not consider this issue to be a factor in Monsanto's favor

for the following reasons: (1) the termination provision in the parties' Agreement was

ambiguous and (2) there was abundant conflicting evidence presented at trial from both parties

as to when the parties intended the Agreement to terminate.  This appears to be a typical

commercial dispute in which a court's determination is necessary to resolve an ambiguous

contract provision.  PacifiCorp cannot be faulted for failing to resolve the conflict prior to the

trial any more than Monsanto can be criticized for pursuing its case under these circumstances.

Therefore, the Court will not consider PacifiCorp's defense of this action as a factor in favor of

granting Monsanto's attorney fees request.

### F.  Other Factors

The Court has reviewed and considered all of the factors listed in Rule 54(e)(3).  To the

extent a factor is not specifically discussed in this order, it was not discussed in the parties'

briefs, nor did the Court independently view it as relevant to the attorney fees request.

### G.  Summary of Attorney Fees Award for Trial Court Work

Based on the reasons explained above, the Court will reduce the amount of fees requested

for the work of the Racine law firm at trial to $65,593.50.  The Court arrived at this figure by (a)

beginning with the $74,876.00 total fees requested for the Racine firm's trial work; (b)

**MEMORANDUM DECISION AND ORDER - 23**

subtracting $1,662.50 for its appellate work because that amount is included separately in the amount awarded on appeal; and (c) subtracting $7,620.00 from Mr. Budge's total billed amount for the reduction of work on the unfiled motion for summary judgment, work on designating an expert past the pre-trial deadline, and work on the unrelated kiln damage claim.[9]

Due to the number of individuals involved and the increased complexity in the calculations and deductions to the amounts requested by the Husch firm, the amount by which that law firm's fees have been reduced is set forth in detail in the tables attached as Appendix A to this Order.  In summary, because of the hourly rate reductions to reflect the prevailing rate, and considering the hour reductions for work on the unfiled motion for summary judgment and in redacting billing statements, the total fees requested for work by the Husch firm at the trial level has been reduced to $270,052.69.  Accordingly, when the Racine law firm's awardable fees are included, the Court will award Monsanto reasonable attorney fees for trial services in the total amount of $335,646.19.

## H.   Bill of Costs for Trial Work

In addition to the request for attorneys' fees, Monsanto filed a bill of costs, seeking $3,109.32 in costs necessarily incurred in this action.  *Bill of Costs* (Docket No. 90).  PacifiCorp has not objected to the costs requested.  Accordingly, and because the costs are supported in the record, the requested $3,109.32 in costs is awarded.

---

[9]  The Court deducted 13.4 hours for work on the unfiled motion for summary judgment at $150.00 per hour because this occurred in May and June of 2001, for a total reduction of $2,010.00.  In addition, the Court has excluded 29.5 hours at the rate of $175.00 per hour for work attempting to designate an expert, in the amount of $5,162.50. Finally, the Court reduced another 2.6 hours of work on the unrelated kiln damage claim.  Part of this work, 0.30 hours, occurred in January of 2003, at a rate of $150.00 per hour, for a reduction of $45, while the remaining 2.30 hours, occurred in March and May of 2003, at a rate of $175.00 per hour, for a reduction of $402.50.

**MEMORANDUM DECISION AND ORDER - 24**

# III.

## APPLICATION FOR FEES AND COSTS ON APPEAL

The parties agreed to transfer Monsanto's request for attorney fees on appeal to the

District Court for determination, *Motion to Transfer*, p. 2 (Docket No. 119), and the Ninth

Circuit Court of Appeals has granted this Motion (Docket No. 118).  Accordingly, the Court will

now consider the reasonableness of Monsanto's requested fees for counsel's appellate work.

**A.**    **Attorneys' Fees on Appeal**

The total amount sought for attorney fees related to PacifiCorp's appeal of the District

Court's ruling is $33,983.75.  *See Wilson Affidavit*, Ex. 1, p. 2 (Docket No. 111) (requesting

$32,321.25 for appellate work by the Husch firm); Ex. 2B to *Budge Affidavit* (Docket No. 115,

Att. 1) (requesting $1,662.50 for appellate work by the Racine firm).  PacifiCorp has not

objected to that fee application because, it explains, it did not find the appeal fee amount, "when

viewed as a whole and in light of the exorbitant district court fee application, excessive."  *See*

*PacifiCorp's Memorandum in Support of Objection to Monsanto's Renewed Petition for*

*Attorney Fees*, p. 2 (Docket No. 123).

The Husch attorney who billed the most hours for the appellate work is Mark Arnold at

billing rates of $315.00 and $351.00 per hour.  *Arnold Affidavit*, Ex. 1, p. 20 (Docket No. 120).

Mr. Arnold filed an affidavit stating that his rates represent a prevailing rate for appellate work

in the Ninth Circuit Court of Appeals.  *Arnold Affidavit*, ¶ 9, p. 16 (Docket No. 120).  The Court

notes, however, that $585.00 was billed for five hours of work performed by Ms. Marsh, a

litigation assistant at the Husch law firm.  As explained above, the Court has reduced Ms.

**MEMORANDUM DECISION AND ORDER - 25**

Marsh's hourly rate to $50.00.  Accordingly, the reasonable fees Monsanto may recover for her five hours of work will be reduced to $250.00.

Otherwise, Mr. Arnold has proposed a reasonable hourly rate for his work, and PacifiCorp has not disputed the amount requested for the appellate work.  *See, e.g.*, *Appellant's Reply to Appellees' Application for Fees on Appeal*, p. 2 (Docket No. 121) ("PacifiCorp does not object to . . . the Application for Attorneys Fees on Appeal in the amount of $33,983.75 . . . .").  Therefore, the Court will include those attorney fees requested in the amount of $33,648.75 ($33,983.75 less $335.00[10]) as part of the overall attorney fees award.

**B.      Bill of Costs on Appeal**

Monsanto has also submitted a Bill of Costs in the amount of $190.00 for costs incurred on appeal.  *Bill of Costs* (Docket No. 107).  PacifiCorp does not object to this request.  *Appellant's Reply to Appellees' Application for Fees on Appeal*, Ex. A to *Monsanto's Renewed Petition for Attorney Fees*, p. 2 (Docket No. 108, Att. 1).  The Court will include the $190.00 as part of the overall award.

## IV.

## MOTION TO TRANSFER

On September 22, 2005, Monsanto filed a Motion to Transfer (Docket No. 119) with the Ninth Circuit Court of Appeals, seeking to transfer its fee application to the district court.  The Ninth Circuit granted the motion the same day.  *Ninth Circuit Court of Appeals' Order* (Docket No. 118).  Accordingly, to the extent the Motion to Transfer remains pending before this Court, it is moot.

---

[10]  The Court calculated this amount by taking the request for $585.00 for Ms. Marsh's five hours of work and subtracting the $250.00 the Court determined was the reasonable fee to arrive at a total reduction of $335.00.

**MEMORANDUM DECISION AND ORDER - 26**

## V.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1.      Monsanto's Renewed Petition for Attorney Fees (Docket No. 108) is GRANTED

in part and DENIED in part.  Monsanto is awarded $335,646.19 as reasonable

attorneys' fees for all counsel's trial work.  In addition, Monsanto is awarded

$3,109.32 in trial costs.

2.      Monsanto's Application for Fees on Appeal (Docket No. 120) is GRANTED.

Monsanto is awarded $33,648.75 in attorneys' fees on appeal, and $190.00 costs

on appeal.

3.      Monsanto's Motion to Transfer (Docket No. 119) is MOOT.



DATED:  **April 24, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

## Appendix A
### Husch law firm's billing for trial work

| Name | Requested Hourly Rate[11] | Allowed Prevailing Rate | Claimed Total Hours | Reductions to Hours | Revised Total Hours | Fees Requested | Fees Allowed |
|---|---|---|---|---|---|---|---|
| Conran (original petition) | $286.02 | $150,00, $175.00 | 53.30 | 0.70[12] | 48.60 at $150/hr<br>4.0 at $175/hr | $15,245.10 | $7,990.00 |
| Arnold (original petition) | $284.49 | $150,00, $175.00 | 5.90 | | 4.70 at $150/hr<br>1.20 at $175/hr | $1,678.50 | $915.00 |
| Wilson (original petition) | $261.00 | $150,00, $175.00 | 618.20 | 7.0[12] | 8.90 at $150/hr<br>602.30 at $175/hr | $161,350.20 | $106,737.50 |
| DeGroot (original petition) | $217.53 | $150,00, $175.00 | 165.90 | 0.30[12]<br>3.0[13] | 162.30 at $150/hr<br>0 at $175/hr | $36,087.75 | $24,345.00 |
| Conran (renewed petition) | $315.00 | $175.00[14] | 2.20 | | 2.20 | $693.00 | $385.00 |
| Arnold (renewed petition) | $316.00 | $175.00[14] | 2.20 | | 2.20 | $696.00 | $385.00 |

---

[11] Information found in *Wilson Affidavit*, Ex. 1 (Docket No. 111).

[12] Upon carefully calculating the hours worked by the corresponding attorney in *Wilson Affidavit*, Ex. 2A (Docket No. 112), a slight discrepancy from the hours listed in *Wilson Affidavit*, Ex. 1(Docket No. 111) was found.  After rechecking several times, the Court will use the value it determined by adding the individual entries.

[13] Reduction for work on unfiled summary judgment motion.

[14] The Court notes that the added bills in the renewed petition for attorney fees were for services rendered after February 28, 2003.  *See Wilson Affidavit*, Ex. 2B (Docket No. 112, Att. 2).

**Appendix A, continued**

Husch law firm's billing for trial work

| Name | Requested Hourly Rate[11] | Allowed Prevailing Rate | Claimed Total Hours | Reductions to Hours | Revised Total Hours | Fees Requested | Fees Allowed |
|---|---|---|---|---|---|---|---|
| Wilson (renewed petition) | $270.00 | $175.00[14] | 16.60 | | 16.60 | $4,482.00 | $2,905.00 |
| Bermel | $185.00 | $135.33 | 0.20 | | 0.20 | $37.00 | $27.07 |
| Farrell | $154.22 - $171.00 | $135.33 | 840.30 | 55.10[15] | 785.20 | $130,614.90 | $106,261.12 |
| McCarthy | $148.50 | $110.00 | 0.40 | | 0.40 | $59.40 | $44.00 |
| Kilpatrick | $112.50 | $110.00 | 8.30 | | 8.30 | $933.75 | $913.00 |
| Marsh (both petitions, combined) | $111.14 - $117.00 | $50.00 | 393.10 | 10.20[16][17] | 382.90 | $44,138.70 | $19,145.00 |

[15] This includes the 42.6 hour reduction for work on the unfiled motion for summary judgment and the 12.5 reduction for work redacting billing statements.

[16] Reduction for work on redacted billing statements for attorney fees' petition.

[17] Reduction for non-attorney paralegal work.